IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WAYNE McGAUGHY, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:06cv320-MEF |
| | ) | |
| KITCHENS AIRFREIGHT, INC.; and | ) | |
| OZARK DELIVERY OF ALABAMA, LLC, | ) | |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM BRIEF AND ARGUMENT
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NOW COMES OZARK DELIVERY OF ALABAMA, LLC, one of the defendants

herein, and submits the following *Memorandum Brief and Argument In Support of Motion*

*For Summary Judgment,* supported by the Affidavits of *Klein Calvert* and *Arthur Scott.*

### SUMMARY OF UNDISPUTED FACTS

Ozark Delivery of Alabama, LLC (hereinafter, "Ozark"), a current DHL contractor,

is an Alabama limited liability company formed July 5, 2005 when a former DHL

contractor, Fast Air of Dixie, LLC (hereinafter, "Fast Air") ceased its operations. A large

number of the customers serviced by Fast Air became customers of Ozark and another

DHL upstart called Kitchens AirFreight, Inc. (Hereinafter, "Kitchens") (*Complaint,* ¶¶

*12–14*). Ozark was established for the purpose of delivering contracted packages for DHL

under the terms of an independent contractor agreement with DHL. (*Affidavit of Klein*

*Calvert, ¶¶ 1 and 2*)  The plaintiff, Wayne McGaughy (hereinafter "McGaughy"), was a courier of Fast Air and applied for a similar position with Ozark on July 15, 2005, and also with Kitchens after Fast Air ceased its operations. (*Complaint, ¶¶ 12–14*)  McGaughy's application for employment with Ozark was rejected based on information from his supervisor at Fast Air, Arthur Scott, demonstrating that McGaughy had a poor attendance record and work history during his time with Fast Air.  (*Affidavit of Klein Calvert, ¶ 6*)  McGaughy's application was one of 40 applications received by Ozark to fill the position. (*Affidavit of Klein Calvert, ¶ 5*)

On July 21, 2005, only five days after applying for a job with Ozark, and after learning that his application with Ozark had been rejected, McGaughy filed a complaint with the EEOC alleging that his non-hiring was based on reasons of race and age discrimination and also filed an NLRB unfair labor charge alleging that he was not hired because of union affiliation. (*Affidavit of Klein Calvert, ¶ 7*) McGaughy filed this suit against Ozark on April 7, 2006 alleging discrimination on the basis of race and age in violation of 42 U.S.C. § 1981, as well as other federal statutes.  (*Doc. 1 at ¶ 1*) Shortly after the filing of suit, a settlement was reached regarding McGaughy's NLRB claim against Ozark wherein McGaughy agreed to dismiss the instant lawsuit in exchange for a $10,000 payment from Ozark, as well as an offer of employment, which McGaughy accepted and, thereafter, became an Ozark employee on June 5, 2006. (*Affidavit of Klein Calvert, ¶¶ 8-10*) At the time that McGaughy became an Ozark employee, Ozark was under the belief that McGaughy had agreed to dismiss the instant lawsuit. (*Affidavit of Klein Calvert, ¶ 10*) This agreement

was never reduced to writing.

On June 5, 2006, the same day that McGaughy was hired by Ozark, he filed an application to the Clerk of this Court for entry of default against Ozark. (*Doc. 7*) When McGaughy learned that Ozark had not been correctly named in the initial complaint, the application for default was withdrawn (*Doc. 8*), but a second motion for entry of default was filed on July 26, 2006 (*Doc. 22*), and the clerk of this court entered a default on July 27, 2006 (*Doc. 23*).   McGaughy's subsequent motion for judgment by default (*Doc. 24*) was granted by this Court on August 3, 2006.  On August 11, 2006, this matter came before the Court on a hearing to prove damages on the default.  In this regard, McGaughy had represented to his employer, Ozark, that he needed to be absent from work in order to conduct union activities when, in fact, he was in attendance at the August 11, 2006 hearing in order to testify regarding his purported damages. (*Affidavit of Klein Calvert, ¶16(h)*)  The damages hearing was continued and the default was set aside by this Court's Order on December 21, 2006 (*Doc. 36*).

The undisputed facts demonstrate that McGaughy had a poor work history with his previous employer, Fast Air of Dixie, and that he accumulated numerous unexcused absences and performed unsatisfactorily. (*Affidavit of Klein Calvert, ¶16(a)*) The undisputed facts also demonstrate that Arthur Scott, McGaughy's supervisor while he was employed with Fast Air, made known to Klein Calvert prior to the denial of McGaughy's application that McGaughy demonstrated insubordinate behavior on numerous occasions and was absent without leave from work on a regular basis. (*Affidavit of Arthur Scott, ¶4*) Scott also

advised Calvert that, on numerous occasions, McGaughy flatly refused to deliver parcels to particular destinations when told to do so and also assembled meetings to conduct union activities on company time. (*Affidavit of Arthur Scott, ¶ 5*) The undisputed facts further demonstrate that Klein Calvert had been made aware of the above-mentioned details regarding McGaughy's poor work history prior to the time that McGaughy's application for employment was denied. (*Affidavit of Arthur Scott, ¶ 6*)

McGaughy was terminated on February 6, 2007 for falsifying a signature on a delivery manifest. (*Supplement to Affidavit of Klein Calvert, ¶ 3*) The offense took place on February 1, 2007 at a cell phone retailer named Future Wireless in Selma, Alabama, when McGaughy attempted to coerce Glenys Dukes, an employee of Future Wireless, to acknowledge receipt of a package that it was obvious had been cut open and its contents removed. (*Supplement to Affidavit of Klein Calvert, ¶ 3*) The incident was reported to Klein Calvert and McGaughy was terminated on February 6, 2007. (*Supplement to Affidavit of Klein Calvert, ¶ 3*)

## SUMMARY JUDGMENT STANDARD

Summary judgment serves to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." FED. R. CIV. P. 56 advisory committee's note, cited in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is appropriate only when the pleadings, depositions, and affidavits submitted by the parties indicate no genuine issue of material fact and show that

the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A court must view the evidence and any inferences that may be drawn from it in the light most favorable to the non-movant. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1526 (11th Cir.1997), *cert. denied sub nom. Combs v. Meadowcraft Co.,* 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998) (citing *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989)).

The party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Metro. Multi-List, Inc.,* 934 F.2d 1566, 1583 n. 16 (11th Cir.1991), *cert. denied,* 506 U.S. 903, 113 S.Ct. 295, 121 L.Ed.2d 219 (1992). Such a showing shifts to the non-moving party the burden "to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed R. Civ. P. 56(e)); *Thompson,* 934 F.2d at 1583 n. 16. A non-movant does not create a genuine issue of material fact by relying on "conclusory allegations based on mere subjective beliefs." *Plaisance v. Travelers Ins. Co.,* 880 F.Supp. 798, 804 (N.D.Ga.1994), *aff'd,* 56 F.3d 1391 (11th Cir.1995) (citing *Carter,* 870 F.2d at 585). Further, a "mere scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement

is that there be no *genuine* issue of *material* fact. *Flemming v. Corrections Corp. of America,* 143 Fed. Appx. 921, 924 (10ᵗʰ Cir.2005) (quoting *Anderson,* 477 U.S. at 247-48). The substantive law applicable to the case determines which facts are material. *Harris,* 2005 WL at *1; *Flemming,* 143 Fed.Appx. at 924 (both citing *Anderson,* 477 U.S. at 248). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes that are irrelevant or unnecessary will not be counted. *Flemming,* 143 Fed.Appx. At 924 (quoting *Anderson,* 477 U.S. at 248, and citing *Chasteen v. UNISIA JECS Corp.,* 216 F.3d 1212, 1216 (10ᵗʰ Cir. 2000) ("A 'material fact' is one which could have an impact on the outcome of the lawsuit, while a 'genuine issue' of such a material fact exists if a rational jury could find in favor of the non-moving party based on the evidence presented.")).

## SUMMARY OF THE ARGUMENT

Wayne McGaughy's poor job performance with Fast Air of Dixie provided a legitimate, business-based, non-discriminatory reason for his non-hiring by Ozark Delivery. The affidavit of Arthur Scott, who was McGaughy's supervisor at Fast Air, demonstrates that McGaughy's job performance was "wholly unsatisfactory," citing McGaughy's insubordination and attendance problems as cause. The Scott affidavit also establishes that he made Klein Calvert aware of McGaughy's poor job performance and the Calvert affidavit demonstrates that this was the reason for Ozark's refusing McGaughy's application. Thus, Ozark has met its burden of articulating by admissible evidence a

legitimate non-discriminatory reason for McGaughy's non-hiring and his claims fail as a matter of law.

**ARGUMENT**

I.    THE UNDISPUTED EVIDENCE OF MCGAUGHY'S POOR WORK HISTORY WITH FAST AIR OF DIXIE DEMONSTRATES A BUSINESS BASED, LEGITIMATE NON-DISCRIMINATORY REASON FOR OZARK'S REJECTING MCGAUGHY'S APPLICATION FOR EMPLOYMENT.

Even if McGaughy had made out a *prima facie* case of discrimination under any of the age and race discrimination theories asserted, which he has not, Ozark has put forth substantial evidence that McGaughy's application for employment was denied based on his poor work history with Fast Air of Dixie, which undisputed evidence constitutes a legitimate non-discriminatory reason for his non-hiring. However, McGaughy has failed to proffer sufficient evidence to prove a *prima facie* case and even shift the burden to Ozark to produce a legitimate non-discriminatory reason for his non-hiring, as his poor work history with Fast Air of Dixie also rendered him an unqualified applicant by Ozark's standards.

Where the plaintiff's allegations of discrimination are based on circumstantial evidence, as in the instant case, the burden shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1991), is employed to decide the merits. The Middle District of Alabama has, on numerous occasions, employed the *McDonnell Douglas* and *Burdine* analysis as summarized in *Hall v. Alabama Assn. of School Bds.*, 326 F.3d 1157, 1166 (11th Cir. 2003), and recently cited in *Guy v. Colonial Bank*, 2007 WL 274235 (M.D. Ala. 2007). Regarding the

burden shifting analysis, the Court stated in *Hall* as follows:

> [A]n employee has the initial burden of establishing a *prima facie* case of unlawful discrimination by a preponderance of evidence. A "*prima facie* case requires 'evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion.' "... If the employee establishes a prima facie case, the burden then shifts to the employer to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the employer discriminated against the employee. This may be done by the employer articulating a legitimate, nondiscriminatory reason for the employment decision, which is clear, reasonably specific, and worthy of credence. The employer has a burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced ... Once the employer satisfies this burden of production, the employee then has the burden of persuading the court that the proffered reason for the employment decision is a pretext for discrimination. The employee may satisfy this burden either directly, by persuading the court that a discriminatory reason more than likely motivated the employer, or indirectly, by persuading the court that the proffered reason for the employment decision is not worthy of belief. By so persuading the court, the employee satisfies his ultimate burden of demonstrating by a preponderance of the evidence that he has been the victim of unlawful discrimination.

> *Hall v. Ala. Assn. of School Bds.*, 326 F.3d 1157, 1166 (11th Cir. 2003) (internal citations omitted).

> The ultimate issue in a gender or age discrimination claim is whether the defendant intentionally discriminated against the plaintiff. *See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993); United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715 (1983)*.

The *McDonnell Douglas/Burdine* analysis is also applicable to race discrimination

claims asserted pursuant to 42 U.S.C. 1981. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318,

1330 (11th Cir. 1998).

> If the plaintiff establishes a *prima facie* case, the employer has the burden of producing a "legitimate, non-discriminatory reasons for the challenged employment action." *Combs*, 106 F.3d at 1528 (citing *McDonnell Douglas*, 411 U.S. at 802). "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 257). If the employer articulates a legitimate, nondiscriminatory reason for its decision, the mandatory inference of discrimination arising from the *prima facie* case is destroyed. *Walker*, 158 F.2d at 1184. The plaintiff must then produce evidence "including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *Combs*, 106 F.3d at 1528.

Assuming, *arguendo,* that this Court decides that McGaughy has made out a *prima facie* case of discrimination, Ozark's knowledge of McGaughy's poor work history at the time that it rejected McGaughy's application constitutes a legitimate non-discriminatory reason for his non-hiring. The undisputed facts set forth in the affidavit of Arthur Scott demonstrate that, at the time that it made its decision not to hire McGaughy, Ozark had a great deal of information regarding McGaughy's poor work history with Fast Air. (*Affidavit of Arthur Scott*) According to Scott, Ozark was aware that McGaughy engaged in insubordinate behavior and was often absent without leave from work. (*Affidavit of Arthur Scott,* ¶ 4) The Scott affidavit also establishes that McGaughy would often refuse to perform tasks assigned to him and that he regularly violated other company policies, including holding meetings to conduct union activities on company time. (*Affidavit of*

-9-

*Arthur Scott, ¶¶5 and 6*)  Significantly, Scott characterizes McGaughy's job performance as wholly unsatisfactory.  (*Affidavit of Arthur Scott, ¶4*)

It is undisputed that Ozark was aware of McGaughy's poor work history with Fast Air at the time that it made its decision not to hire him, as both the affidavits of Arthur Scott and Klein Calvert demonstrate that Scott made Calvert aware of these material facts prior to Ozark's denying McGaughy's application.  (*Affidavit of Arthur Scott, ¶ 6, and Affidavit of Klein Calvert, ¶6* )  In this regard, the affidavit of Klein Calvert demonstrates that McGaughy's application was denied because he had a poor work history with Fast Air in that he had numerous unexcused absences and performed poorly.  (*Affidavit of Klein Calvert, ¶16(a)*)  The Calvert affidavit also demonstrates that the denial of McGaughy's application was non-discriminatory, as Ozark hired an equal and fair cross section of demographics and also hired individuals who were older and better qualified than McGaughy.  (*Affidavit of Klein Calvert, ¶16(b) and (d)*)

The Calvert affidavit is also consistent with the affidavit of Arthur Scott regarding McGaughy's practice of conducting union activities on company time.  In this regard, the Calvert affidavit establishes that McGaughy actively mislead Calvert regarding requested time off on August 11, 2006, stating that he needed to conduct union activities on that date when, in truth, he was in attendance for a hearing before this Court to prove damages on the default judgment against Ozark that has now been set aside.  (*Affidavit of Klein Calvert, ¶ 16(h)*)  In addition to the inconsistent statements noted above, McGaughy has also asserted inconsistent claims in that he alleges in his unfair labor complaint before the

National Labor Relations Board that his non-hiring was due to his union affiliation, but alleges in his EEOC complaint, as well as his complaint before this Court, that his non-hiring was based on reasons of age and race discrimination.  (*Affidavit of Klein Calvert, ¶ 16(e)*).

The decision not to hire McGaughy in July 2005 for the non-discriminatory reasons cited herein were confirmed during his employment with Ozark, as he was terminated on February 6, 2007 for falsifying a signature on a delivery manifest. (*Supplement to Affidavit of Klein Calvert, ¶ 3*) On the day before, McGaughy had delivered a package to Future Wireless, in Selma, Alabama, that had been cut open and the contents removed. (*Supplement to Affidavit of Klein Calvert, ¶ 3*)   The offense occurred when McGaughy attempted to coerce Glenys Dukes, a Future Wireless employee, to sign for the empty package and, when Dukes refused, McGaughy forged her signature on a "Signature Proof of Delivery" sheet which is in violation with Ozark's independent contractor agreement with DHL. (*Supplement to Affidavit Klein Calvert, ¶ 3*)

Ozark concedes that the evidence set forth in the supplement to the Calvert affidavit pertains to occurrences that took place after the relevant time period (*i.e.,* after McGaughy's initial non-hiring). However, the affidavit does serve to validate Ozark's decision in July of 2005 that McGaughy's poor job performance prior to his application for employment with Ozark justified Ozark's non-hiring of McGaughy that has, unfortunately, continued until the present time.

The undisputed facts demonstrate that McGaughy was not hired in July of 2005

because he had a bad work history and had proven himself to his employer (at that time, Fast Air) to be a bad employee. Hence, as McGaughy's non-hiring was due to his own poor work record and not because of reasons of age or race, his complaint against Ozark is due to be dismissed.

## CONCLUSION

For the reasons set forth herein, this defendant states that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.

Respectfully submitted,

DAVID E. ALLRED (ALL039)
D. CRAIG ALLRED (ALL078)
Attorneys for Above-Named Defendant

OF COUNSEL:
DAVID E. ALLRED, P.C.
Post Office Box 241594
Montgomery, Alabama 36124-1594
Telephone:    (334) 396-9200
Facsimile:    (334) 396-9977
E-mail:       dallred@allredpclaw.com
              callred@allredpclaw.com

-12-

## CERTIFICATE OF SERVICE

I hereby certify that I have this 23ʳᵈ day of February, 2007 filed the *Memorandum Brief and Argument in Support of Motion for Summary Judgment* with the Clerk of the Court for the United States District Court for the Middle District of Alabama, Northern Division, using the CM/ECF system, which will send notification of such filing to:

> Jay Lewis, Esq.
> Carol Gerard, Esq.
> Gordon L. Blair, Esq.
> James C. Pennington, Esq.

OF COUNSEL