IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WAYNE McGAUGHY, ) | |
|     Plaintiff, ) | |
| ) | |
|     v. ) | Civil Action No. 2:06-cv-320-MEF |
| ) | |
| KITCHENS AIRFREIGHT, INC., and ) | |
| OZARK DELIVERY OF ALABAMA, LLC ) | |
|     Defendants. ) | |

**RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** Plaintiff Wayne McGaughy ("Plaintiff"), by and through his attorney of record, and would submit the following brief as his response to defendant Ozark's motion for summary judgment.

As the Court recalls, the deposition of the owner of Ozark, Klein Calvert, was set for March 20, 2007, as Mr. Calvert had been out of the continental United States earlier and was back in his office for the first time on this date. The deposition transcript is expected in ten days, as it must come from the court reporter in Kansas. Plaintiff anticipates filing a supplemental brief, as there were admissions in Mr. Calvert's deposition that contradict certain statements in his sworn affidavit and other submissions. Those admissions are noted *infra* and will be supported by deposition excerpts when received.

**I.  STATEMENT OF THE CASE**

On or about July 15, 2005, Plaintiff applied for a position as a delivery driver with Ozark. That firm and Kitchens Airfreight, Inc., were the successors to a DHL local delivery contract formerly held by Fast Air of Dixie. Plaintiff was turned down for the position while younger,

non-white persons were hired. Plaintiff has sued for race discrimination under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and the Age Discrimination in Employment Act.

Plaintiff received a Notice of Right to Sue from the EEOC and timely brought this suit. Ozark failed to properly answer the complaint and default was entered, followed by default judgment. Ultimately, the default was set aside.

Ozark has now moved for entry of judgment as a matter of law. Plaintiff hereby submits his brief in opposition.

## II. STATEMENT OF MATERIAL FACTS

1. Plaintiff notes first that while the defendant refers repeatedly to "undisputed facts" the material facts are, in fact, hotly disputed. The "facts" set out by the defendant are"undisputed" only because at the time of their submission, Plaintiff had not had an opportunity to set out the facts and evidence which the Court is required to accept as true for the purposes of summary judgment. Those facts are set out below.

2. Plaintiff, a white male, was born on September 7, 1945, making him 59 years of age at the time of the employment action at issue here. (Exhibit 1, p.2, EEOC affidavit).

3. Plaintiff had worked for Fast Air of Dixie for several years, and had performed his work to the reasonable satisfaction of his employer (Exhibit 2, McGaughy affidavit).

4. As the defendant admits, Plaintiff applied for a position with Ozark on or about July 15, 2005, after the Fast Air contract had been split between Ozark and Kitchens Airfreight, Inc.

5. Plaintiff's application was rejected.

6. Plaintiff filed an EEOC Charge of Discrimination on July 21, 2005, alleging race and age

discrimination. (Exhibit 1, EEOC Form 5).

7. In its response to the EEOC, Ozark asserted that, "[w]e had all our routes filled and all necessary employees hired at the time Mr. McGaughy applied. At that time, there were no positions available and Mr. McGaughy was put in the application file." (Exhibit 3, letter from Klein Calvert to EEOC with attached employee list). There is no mention in that response of any performance-related problems with Plaintiff.

8. On or about May 1, 2006, Ozark, through its president, Klein Calvert, asserted in what purported to be an "answer" to this lawsuit that Plaintiff was not hired because "all positions were filled at the time and no jobs were available." Again, there is no mention of performance-related problems. (Exhibit 4, 5/1/06 letter from Calvert with 4-27-06 attachment). In fact, in his deposition, Calvert admitted that he had brought drivers in from other offices outside of Alabama to run routes for up to five weeks after the transition, which was at least three weeks after Plaintiff applied for employment.

9. Ozark first raised the issue of Plaintiff's performance in a July 21, 2006, letter to the undersigned by saying, "Mr. McGaughy's performance with the previous employer was less than satisfactory." (Exhibit 5).

10. Now, however, as its *raison du jour*, the defendant has completely abandoned its "no jobs were available" defense in favor of the "poor work history" defense.

11. The fact is that Plaintiff was an excellent employee. (Exhibit 6, Thrift affidavit).

12. Ozark's records show that within six weeks of Plaintiff's having applied for the job with Ozark, 20 black applicants and 7 white applicants started working for the company. Sixteen of the black applicants started working shortly after Plaintiff's application was

rejected. (Exhibit 7, EEO-1 headcount detail report). Several of the younger persons and black persons hired after Plaintiff applied had less experience than Plaintiff. (Exhibit 2, McGaughy affidavit).

13. In his submission to the EEOC, Calvert included an "Employee List" purportedly showing a list of the employees who had been hired to work for Ozark. (Exhibit 8, Employee List [also submitted as attachment to Exhibit 4]). Of the 21 employees listed, 18 were substantially younger (by 8 years or more) than Plaintiff. Thirteen were black and eight were white.

14. That hiring pattern belies what Calvert claimed in his July 21, 2006, "response to the alleged charges," that his employees are "7 Black, 7 White and one Asian." (Exhibit 4).

15. Contrary to the defendant's "undisputed" fact, Plaintiff did not agree "to dismiss the instant lawsuit in exchange for a $10,000 payment from Ozark, as well as an offer of employment." While Calvert claims in paragraph 11 of his affidavit that the unwritten settlement "was agreed by the parties and witnessed by George Yarbrough, Local Union 612, Teamsters, Chauffeurs, Warehousemen & Helpers, Birmingham, AL," that claim is simply untrue. Plaintiff avers that it is false (Exhibit 2), as does George Yarbrough. (Exhibit 7, Yarbrough affidavit). Plaintiff said, when queried about whether he would drop the lawsuit, "have your lawyer call my lawyer." (Exhibit 2). No attorney representing the defendant contacted the undersigned until just before the damages hearing. In fact, the settlement agreement contemplated in July and later reduced to writing (Exhibit 8, Settlement Agreement) specifically provides as follows:

    This agreement settles only the allegations in the above captioned

        case(s), and does not constitute a settlement of any other case(s) or matter(s). It does not preclude persons from filing charges, the General Counsel from prosecuting complaints, or the Board and the courts from finding violations with respect to matters which precede the date of the approval of this Agreement regardless of whether such matters are known to the General Counsel or are readily discoverable.

16. Now, in his deposition, Calvert admits that Plaintiff never actually spoke to him about the lawsuit at all. He now claims that it was George Yarbrough who told him that the lawsuit would be dismissed, first in a meeting between just the two of them in June, 2006, and then in a later meeting attended by Calvert, Yarbrough, and Plaintiff after Plaintiff had already been hired pursuant to the NLRB settlement agreement. That is simply not true. Yarbrough did not agree in either meeting that the lawsuit would be dismissed. (Exhibit 12, Supplemental Affidavit of George Yarbrough).

17. This is not the only instance of Calvert's mendacity. He claims that Plaintiff lied to him about "why he needed to be off of work on August 11th stating he had union activities when in fact he was planning to testify before this court at a damage hearing." (Calvert affidavit, ¶ 16 h). Plaintiff never communicated with Calvert at all about being off work on that date, as Calvert has now admitted in his deposition. Plaintiff asked his manager, Chon Turner, whether he could take a day off for matters **unrelated** to union business. When she told him he could not, his attorney issued and served a subpoena commanding his appearance before this Court on that date to give indispensable testimony in the damages hearing. He gave a copy of the subpoena to Turner, who then placed it in his personnel file. (Exhibit 2, McGaughy affidavit) (Exhibit 7, subpoena). In fact, the defendant produced a copy of that subpoena to the undersigned as part of Plaintiff's

personnel file in response to a request for production of documents. The defendant knew where Plaintiff would be on August 11th, and knew that he would be there to offer testimony.

### III.  LEGAL ARGUMENT

**A.  SUMMARY JUDGMENT STANDARD**

Under the provisions of Rule 56 ( c), F.R.C.P., summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex v. Cattrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant "always bears the initial responsibility of informing the district court of the basis for its motion"... and ... must "demonstrate the absence of a genuine issue of material fact." *Id*.

After the movant has met its burden under Rule 56( c ), the non-movant must set forth "specific facts showing that there is a genuine issue for trial" *Id*. In ruling, the Court "must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986); cited in *Reeves v. Thigpen*, 879 F.Supp 1153, 1166 (M.D.Ala. 1995).

In entertaining a motion for summary judgment, the court should review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but the court may not make credibility judgments or weigh the evidence. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990). Although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence supporting the nonmovant as well as that

evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.  9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, pp. 299-300 (2d Ed. 1995); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).

In an employment discrimination case, the court is required to consider the evidence supporting the plaintiff's prima facie case and any such evidence tending to undermine the defendant's nondiscriminatory explanation.  The existence of a prima facie case combined with sufficient evidence for the trier of fact to disbelieve the defendant's proffered nondiscriminatory reason for the employment action it took is sufficient for the trier of fact to infer the ultimate fact of discrimination.  *Reeves*, at 147.

**B.  ARGUMENT-RACE DISCRIMINATION**

**1.  Plaintiff has established a *prima facie* case of race discrimination**

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin..."  42 U.S.C. § 2000e-2(a).  *Maynard v. Board of Regents,* 342 F. 3d 1281, 1288 (11th Cir.2003).

Title VII does not require the plaintiff "to prove directly that race or gender was the reason for the employer's challenged decision.  Rather, in showing that the employer discriminated against him, [Plaintiff] may rely on direct or circumstantial evidence of discrimination."  *Maynard*, 342 F. 3d at 1288.  See also, *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 526 (1993).

Since direct evidence of racial animus can be difficult to produce, it is appropriate to use the three-step burden shifting framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to analyze circumstantial evidence of discrimination. First, "the plaintiff must create an inference of discrimination by establishing a *prima facie* case. If he does so, the defendant must 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'...The plaintiff may then attempt to show that these reasons are pretextual or may present other evidence to show that discriminatory intent was more likely the cause of the employer's actions." *Nix*, 738 F.2d at 1184. (quoting *McDonnell Douglas Corp.*, 411 U.S. 792 at 802); *see also Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Plaintiff must show: (1) that he belongs to a protected racial group; (2) that he was subjected to an adverse employment action to which non-protected persons were not subjected; (3) that the adverse action was based on his race. *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

If a plaintiff chooses to make use of the *McDonnell Douglas* presumption, he initially does not need to present evidence from which the trier of fact could conclude that the adverse employment action taken against him was caused by improper discrimination. Instead, he need only establish that (1) an adverse employment action was taken against him, (2) he was qualified for the job position in question, and (3) different treatment was given to someone who differs with regard to the relevant personal characteristic. *Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir. 1999).

A plaintiff's *prima facie* case raises a presumption of illegal discrimination. *Burdine*, 450 U.S. at 254. *See also Hunter v. Citibank, N.A.*, 862 F.Supp. 902 (E.D.N.Y.1994), affirmed 60

F.3d 810, certiorari denied 116 S.Ct. 483, 516 U.S. 978, 133 L.Ed.2d 410.  (Upon a showing by Plaintiff that he has met his *prima facie* burden, an inference of discriminatory intent is raised). As a general rule, "[d]emonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997).[1]

There is no dispute that Plaintiff is a member of a protected group.  He was qualified for the job in question, having worked at that or a substantially identical job for at least six years. His application for employment was rejected, and several members of non-protected classes, younger persons and black persons, were subsequently selected.  He has thus met his *prima facie* burden under *McDonnell Douglas* and *Wright*.

The defendant has properly assumed the burden of production of a legitimate non-discriminatory reason for its actions toward Plaintiff.

The defendant's problem is that it has changed its story, claiming to the EEOC that Plaintiff was not hired because there were no jobs available.  Overcome by facts showing the opposite (including the fact that out-of-state drivers were still filling in for weeks after Plaintiff's application was rejected), however, the defendant claims now that Plaintiff's application was rejected because of "his poor work history."  That shift alone is sufficient to show pretext.

In the case of *Mock v. Bell Helicopter Textron, Inc.*, 196 Fed.Appx. 773, 2006 WL 2422835 (C.A.11 (Fla.)), Bell refused to tell Mock at the time of his termination why he was being fired; later, however, Bell gave him a reason in a letter.  The Eleventh Circuit held that,

---

[1] In the Eleventh Circuit, the satisfaction of the McDonnell Douglas test raises a "presumption," but not an "inference." *Walker v. Mortham*, 158 F.3d 1177, 1184, n. 10 (11th Cir. 1998).

"[i]n light of Bell's refusal to tell Mock-at the time it fired him-why his employment had come to an end, a trier of fact reasonably could find that the letter constituted a pretext for discrimination." *Id.*

In *Cooley v. Great Southern Wood Preserving*, 2005 WL 1163608, (C.A.11 (Ala., 2005), the Eleventh Circuit pointed out that the defendant may be hoist on its own petard by proffered reasons that are inconsistent:

> The court, considering all of the evidence, ascertains whether the plaintiff has cast doubt on the defendant's proffered nondiscriminatory reasons, sufficient to allow a reasonable factfinder to determine that these reasons were "not what actually motivated its conduct." *Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1258 (11th Cir.2001),In casting such doubt, the plaintiff may demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find [all of those reasons] unworthy of credence."

*Cooley* at **6.

Nor is the Eleventh Circuit alone in this holding. The Eighth Circuit has opined that a plaintiff may make a sufficient showing of pretext by different means, including showing that an employer: (1) failed to follow its own policies, *Ledbetter v. Alltel Corporate Servs., Inc.*, 437 F.3d 717 (8th Cir. 2006); (2) treated similarly-situated employees in a disparate manner, *Putman v. Unity Health Sys.*, 348 F.3d 732 (8th Cir. 2003); and (3) made substantial changes over time in its proffered reason for an employment decision, *Kobrin v. Univ. of Minn.*, 34 F.3d 698 (8th Cir. 1994), cert. denied, 522 U.S. 1113, 118 S.Ct. 1046, 140 L.Ed.2d 111 (1998). Cases collected in *Arnold v. Nursing and Rehabilitation Center at Good Shepherd, LLC*, 471 F.3d 843, 847 (8th Cir. 2006). The Fifth Circuit, in *Staten v. New Palace Casino*, 187 Fed.Appx. 350 (5th Cir. 2006), has also weighed in on this issue by holding that, "[w]hen an employer offers inconsistent

explanations for its employment decision at different times ... the jury may infer that the employer's proffered reasons are pretextual." *Id.* at 359. Identical holdings came from the Fourth Circuit in *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852-53 (4th Cir. 2001); the Second Circuit in *EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2nd Cir. 1994); and the First Circuit in *Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir. 2000). The Supreme Court is in accord. In *Reeves v. Sanderson Plumbing Products, Inc.*, the high court held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148. The Supreme Court had held even earlier than the 2000 Reeves case that,

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) ay, together with the elements of the *prima facie* case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination.

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993).

The instant case is the very embodiment of what the Eighth Circuit called "substantial changes over time in its proffered reason." The first reason offered – that no jobs were available – is refuted by the defendant's own records. The second bears further review.

Arthur Scott did not like Wayne McGaughy, as the court may discern from the assertions in Scott's affidavit. That dislike was noted by Judy Thrift, whose own affidavit refutes Scott's screed. Plaintiff's job performance was **not** "wholly unsatisfactory;" he was **not** "insubordinate"; he was **not** "absent without leave from work on a regular basis." Plaintiff did **not** "flatly refuse to deliver parcels;" he did **not** "fail to do so when asked" any more than any other driver; he did

-11-

**not** "assemble meetings to conduct union activities on company time." (Exhibit 6, Thrift affidavit).

Scott's affidavit is wholly devoid of any specific facts such as times, dates, places, examples of insubordinate communications, and any concrete instances of conduct that would permit a conclusion that Plaintiff exhibited "poor job performance." There is no documentation of any of the failings on Plaintiff's part; in fact, no assertion that there was **ever** any such documentation.

Moreover, had Plaintiff's performance been as egregious as Scott pretends, and had he "disclosed to Klein Calvert the facts ... regarding the poor job performance of Wayne McGaughy," one must question why Calvert did not report that to the EEOC in his response, instead of simply saying that no jobs were available. In fact, had there been no jobs available at the time of application, one must ask why Plaintiff's "application for employment with Ozark was being considered."

The inescapable conclusion is that Scott's affidavit – like Calvert's – is a sham, and they are both riddled with such inconsistencies with other evidence as to be unworthy of belief, thus clearly demonstrating pretext as a matter of law.

The defendant has produced not one scrap of evidence other than those two affidavits to demonstrate an absence of genuine issues of material fact; Plaintiff has produced affidavits which must be believed **plus** undisputed documentary evidence clearly showing genuine issues of material fact.

## CONCLUSION

Plaintiff respectfully submits that he has proven his *prima facie* case by noting that, as to

both age and race, he is a member of a protected class, jobs were available, he applied for them, his application was rejected, and the jobs were filled by younger persons and black persons. Plaintiff has produced evidence sufficient for a trier of fact to conclude that the legitimate non-discriminatory reasons proffered by the defendant are unworthy of belief, establishing their pretextual nature and permitting – even commanding – an inference that Plaintiff's rejection was because of age and/or race.

Plaintiff prays that the Court will overrule and deny the defendant's motion for summary judgment.

RESPECTFULLY SUBMITTED on this the 21st day of March, 2007.

/s/ JAY LEWIS
Jay Lewis
Law Offices of Jay Lewis, LLC
P.O. Box 5059
Montgomery, AL 36103
(334) 263-7733 (Voice)
(334) 832-4390 (Fax)
J-Lewis@JayLewisLaw.com
ASB-2014-E66J

## CERTIFICATE OF SERVICE

  I hereby certify that on the __21st__ day of March, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such following to the following:

David Allred
Craig Allred
Attorneys for Defendant

              /s/ JAY LEWIS
              Jay Lewis, ASB-2014-E66J
              Law Offices of Jay Lewis, LLC
              P.O. Box 5059
              Montgomery, AL 36103
              (334) 263-7733 (Voice)
              (334) 832-4390 (Fax)
              J-Lewis@JayLewisLaw.com