IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WAYNE McGAUGHY,<br>   Plaintiff, | )<br>)<br>) |
| v. | )   Civil Action No. 2:06-cv-320-MEF |
| KITCHENS AIRFREIGHT, INC., and<br>OZARK DELIVERY OF ALABAMA, LLC<br>   Defendants. | )<br>)<br>)<br>) |

### AFFIDAVIT OF WAYNE McGAUGHY

BEFORE ME, the undersigned authority, personally appeared Wayne McGaughy who is known to me and who, being first duly sworn upon his oath, did depose and say as follows:

"My name is Wayne McGaughy, Plaintiff herein. I have personal knowledge of the facts asserted.

"I was employed in March, 1999, by Fast Air of Dixie, a local delivery contractor for DHL, as a delivery driver. On or about July 5, 2005, Fast Air's contract was split between two new contractors, Kitchens Airfreight, Inc., and Ozark Delivery of Alabama, LLC. The new companies were hiring employees from the pool of Fast Air drivers. I applied for employment with Ozark; my application was rejected.

"I performed my work for Fast Air to the reasonable satisfaction of my employer and my supervisor, Judy Thrift. I was never disciplined or warned about my performance and, to the best of my knowledge, there was no disciplinary documentation placed in my personnel file.

"I have been informed of the conclusory assertions of poor performance contained in the affidavit of Arthur Scott, and those assertions are false. I was rarely off work, and when I was, it was always with approval in advance. I never refused to deliver parcels to particular



EXHIBIT 2

destinations. I never organized employee meetings on company time, because that was against union policy. I was never insubordinate to Mr. Scott, in that I never refused to do anything he asked me to do, although most direction came directly from Judy Thrift. Mr. Scott and I simply did not get along well, but I was always compliant with his demands.

"I have also read the affidavit of Klein Calvert, and certain assertions he makes are false. Mr. Calvert claims that I was not hired because of poor attendance and work history; however, in his declaration to the EEOC in response to my Charge of Discrimination, he claimed only that the positions were already filled. I have personal knowledge that younger drivers and black drivers were hired at and immediately after the time I applied. For example, LaSayn Collins, a younger, black driver was hired to start on August 17, 2005, as were Alisha Harris, Jacqueline Hampton and Felita Smith, younger black drivers; Toyia Truitt, a younger black driver was hired to start on July 18, 2005; Phetsa "Pat" Xayadeth, a substantially younger Thai driver was hired several weeks after my application was rejected. I know that the above-listed individuals had less experience than I did because they were hired by Fast Air of Dixie while I was employed there.

"Mr Calvert also claims that my hiring on June 5, 2006, was in consideration of my dismissing "all litigation" that I had filed against the company. This is patently false; the hiring was part of a settlement agreement with the National Labor Relations Board growing out of a complaint filed by our union. When Mr. Calvert asked me whether I would be willing to settle the civil lawsuit, I told him, "have your lawyer contact my lawyer." My written contract with my lawyer prohibits me from settling my lawsuit directly; I am required to settle it only through the offices of my lawyer, which is why I said that to Mr. Calvert. I did not intend for the NLRB

settlement to effect settlement of the lawsuit, nor did I ever tell Mr. Calvert that or make statements that could conceivably make Mr. Calvert believe that.

"With regard to whether I was hiding anything about the August 11, 2006, damages hearing, that is blatantly false. I did not speak to Mr. Calvert at any time about why I wanted to be off on August 11th, or about any other subject. I did speak to Chon Turner, my manager, about it. I told her that I needed to be off, and that it was NOT union-related. When she disapproved my leave, I informed my attorney of that fact, and he issued a subpoena commanding my appearance. I took it to Ms. Turner, and it was made a part of my personnel file. In fact, a copy of the subpoena was produced to my attorney in response to a request for production of documents. The truth is that Ms. Turner, the only person to whom I spoke, knew that I was to be in federal court on August 11th, and she knew that it was in connection with this case. Other than greeting him on occasion, I have only spoken with Klein Calvert once; that took place during July, 2006, during a meeting with him and George Yarbrough. I have never spoken with Mr. Calvert by telephone or communicated with him in any other way."

Further, deponent saith not.

_____
WAYNE McGAUGHY, Affiant

SWORN TO and SUBSCRIBED before me this 13 day of March, 2007.

_____
NOTARY PUBLIC, Alabama at Large
My commission expires 11/15/08