IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WAYNE McGAUGHY,<br>    Plaintiff,<br><br>v.<br><br>KITCHENS AIRFREIGHT, INC., and<br>OZARK DELIVERY OF ALABAMA, LLC<br>    Defendants. | Civil Action No. 2:06-cv-320-MEF |

### AFFIDAVIT OF JUDY THRIFT

BEFORE ME, the undersigned authority, personally appeared Judy Thrift who is known to me and who, being first duly sworn upon her oath, did depose and say as follows:

"My name is Judy Thrift. I have personal knowledge of the facts asserted.

"I was employed from 1993 until 1998 by Wills Air Freight, and then from 1998 until June, 2005, by Fast Air of Dixie, successive local delivery contractors for DHL. I was the manager of the Montgomery facility. Wayne McGaughy worked under my supervision from March, 1999, until on or about July 5, 2005, when Fast Air's contract was split between two new contractors, Kitchens Airfreight, Inc., and Ozark Delivery of Alabama, LLC. I have personal knowledge of Wayne's work history.

"Arthur Scott, black male, worked as my assistant and he had some supervisory duties with regard to the drivers, but I was the primary supervisor and maintained the records of the terminal.

"I have been informed of the assertions of Wayne's poor performance contained in the affidavit of Arthur Scott, and those assertions are false.

"Wayne and Arthur did not see eye-to-eye on some subjects, and Arthur actively disliked



Wayne. Arthur would comment from time to time that Wayne was "nothing but trouble."

"With regard to his conduct at work and his performance of his job duties, Wayne was an excellent employee. I never had occasion to discipline him, as he performed his job well.

"Wayne occasionally brought undelivered packages back to the terminal, as did all drivers. My recollection is that Wayne brought fewer packages back than most other drivers. Had Wayne "flatly refused to deliver parcels to particular destinations," Scott would have been required to report that fact to me, and I would have been required to take disciplinary action. No such thing was ever reported.

"Wayne's work ethic was excellent. He was always on time for work. He was never insubordinate to me, and I never heard him be insubordinate to any supervisor. Again, had Wayne been insubordinate to a supervisor, I would have been notified.

"To the best of my recollection, he never had an unexcused absence from work. Every January, he would bring in his requests for vacation and other leave for the entire year, and specific days were either approved or disapproved at that time. Whenever Wayne had to be off at other times – for medical appointments, for example – he would always call in advance to let me know. Since Arthur did not normally arrive until 10:30 a.m., I would pass the information along to him. Arthur was rarely at the terminal when Wayne left on his route.

"To the best of my knowledge, although Wayne was active in organizing the union, he never made it a 'practice to assemble meetings to conduct union activities on company time,' although I have heard that groups of two or three drivers would chat about the union when they were refueling their trucks at a nearby service station. I would not have considered this to be assembling meetings.

"In short, I considered Wayne McGaughy to be a very good employee."

_____
JUDY THRIFT, Affiant

SWORN TO and SUBSCRIBED before me this 19 day of March, 2007.

_____
NOTARY PUBLIC, Alabama at Large

My commission expires 11/15/08