IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

<table>
<tr><td>WAYNE McGAUGHY</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiff,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>CASE NO. 2:06-cv-320-MEF</td></tr>
<tr><td></td><td>)</td><td>(WO)</td></tr>
<tr><td>KITCHENS EXPRESS, <em>et al.</em>,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendants.</td><td>)</td><td></td></tr>
</table>

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Wayne McGaughy ("McGaughy") brings this action against Ozark Delivery of Alabama, L.L.C. ("Ozark") for alleged race and age discrimination against him arising out of Ozark's failure to hire him.[1] McGaughy seeks redress pursuant to 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981, and 29 U.S.C. 621 § *et seq.* ("ADEA"). This cause is before the Court on Defendant Ozark's Motion for Summary Judgment (Doc. # 47) filed on February 23, 2007. Also before the Court is McGaughy's Motion to Strike (Doc. # 52) filed on March 31, 2007. The Court has carefully considered all submissions in support of and in opposition to these motions and finds that the Motion to Strike (Doc. # 52) is due to be

---

[1] Similar claims were also lodged against another one of McGaughy's potential employers, Kitchens Airfreight, Inc. ("Kitchens"). Pursuant to a joint stipulation of dismissal filed by Kitchens and McGaughy, the Court dismissed with prejudice the claims brought against Kitchens by an Order (Doc. # 42) entered on February 6, 2007.

GRANTED and the Motion for Summary Judgment (Doc. # 47) is due to be DENIED.[2]

## II. JURISDICTION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The parties do not contest personal jurisdiction or venue, and the court finds sufficient factual basis for each.

## III. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the

---

[2] McGaughy filed a Motion for Leave to File Supplemental Response to Motion for Summary Judgment (Doc. # 65) on April 19, 2007. Given that the Motion for Summary Judgment is due to be denied, McGaughy's motion for leave to file a supplemental response is due to be denied as moot.

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## IV. FACTS

The Court has carefully considered all deposition excerpts and documents submitted

in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts:

McGaughy, a 61-year old Caucasian resident of Montgomery County, Alabama, was a route driver for Fast Air of Dixie ("Fast Air").  In early July 2005, when Fair Air lost its main contract with DHL, Fast Air went out of business.  Consequently, McGaughy and his fellow Fast Air employees found themselves out of a job.  One of the companies that sprung up in Fast Air's wake was Ozark.  Ozark, which is owned by Klein Calvert ("Calvert"), picked up much of the  area once covered by Fast Air's contract with DHL.

On July 5, 2005, Ozark began its operations out of Montgomery, Alabama.  Ozark offered all former Fast Air employees an opportunity to apply for jobs with its company.  On July 15, 2005, McGaughy applied for a driving job with Ozark.  McGaughy was 59 at the time.  Ozark rejected McGaughy's application for employment.[3]  Ozark had received 40 applications, from which it hired 21 employees.  Of those hired, thirteen were African-American and eight were Caucasian.  Three were older than McGaughy.

McGaughy claims that, despite being qualified for the position, his application was denied on account of his age and, furthermore, that "[p]reference in hiring at Ozark was given to African-Americans .... [and the] decision-maker employed by Ozark in the employment action at issue was African-American."  Doc. 12 at ¶¶ 29-30.

---

[3] McGaughy was later hired by Ozark on June 5, 2006.  He was terminated by Ozark on February 6, 2007.

In its summary judgment submissions, Ozark asserts that McGaughy's application was rejected because McGaughy had a poor work history with Fast Air. In this regard, Ozark submits an affidavit from Arthur Scott, who was an assistant manager at Fast Air and one of McGaughy's supervisors. Scott commented that "McGaughy's job performance was wholly unsatisfactory [at Fast Air]." Doc. 46-4 at 1. Specifically, "McGaughy demonstrated insubordinate behavior on numerous occasions and was absent without leave from work on a regular basis." *Id.* On some instances McGaughy "flatly refused to deliver parcels to particular destinations or just simply failed to do so when asked." *Id.* at 2. Scott, who had begun working for Ozark at the time that McGaughy submitted his application to the fledgling company, relayed these observations to Calvert.[4]

On July 21, 2005, McGaughy filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On April 6, 2006, Calvert responded directly to the EEOC investigator. Calvert declared that when McGaughy applied for a position with Ozark, "We had all our routes filled and all necessary employees hired at the

---

[4] McGaughy disputes these allegations concerning his work history with Fast Air. In this respect, McGaughy submits an affidavit of Judy Thrift, who was the manager of Fast Air's Montgomery facility. Scott was Thrift's assistant. Thrift disputes as "false" Scott's accusations that Wayne performed poorly at his job with Fast Air. In fact, Thrift described McGaughy as an "excellent employee." While Thrift cannot affirmatively recall whether McGaughy ever "flatly refused to deliver parcels" as Scott alleges, Thrift contends that "Scott would have been required to report that fact to me, and I would have been required to take disciplinary action." Doc. 51-7 at 2. Furthermore, according to Thrift, McGaughy was never insubordinate to Thrift and Thrift never herself heard of such insubordination to any other supervisor.

time Mr. McGaughy applied.  At that time, there were no positions available and Mr. McGaughy was put in the application file."  Doc. 51-4.  Ozark did not raise the issue of McGaughy's performance until this litigation had already commenced.[5]

# V.  DISCUSSION

## A.    Motion to Strike

Before discussing the dispositive motion before the Court, it is necessary to take up McGaughy's Motion to Strike.  McGaughy does not provide a basis on which he moves the Court to strike Calvert's supplemental affidavit as well the portions of Ozark's brief in support of its motion for summary judgment that refer to the contents of said affidavit.  Rule 12(f) of the Federal Rules of Civil Procedure provides grounds for motions to strike; however, that rule provides the proper bases for striking certain improper material in

---

[5] McGaughy contends that this omission is evidence of pretext.  Ozark counters that its "intentional omission was out of self-preservation."  Doc. # 56 at 6.  Given that McGaughy filed an EEOC claim within six days of submitting an application to Ozark and had already filed a claim with the National Labor Relations Board, "any mention of McGaughy's poor work history with Fast Air would have only further motivated him to pursue further litigation against Ozark.  In light of the fact that there were no positions available, it is also clear that there was no reason to stir up acrimony by doing so."  Doc. 56 at 6-7.  The confusing saga of the early stages of this litigation – which provides some context for Ozark's statements – is recounted in this Court's Amended Memorandum Opinion and Order (Doc. # 36) entered on December 21, 2006 in which this Court set aside the Entry of Default and Entry of Default Judgment.  Given that this Motion for Summary Judgment focuses solely on the merits of McGaughy's claims – which relate only to his initial non-hiring by Ozark – it is unnecessary at this point to rehash this case's circuitous procedural history.

pleadings, not in affidavits. *See, e.g., Norman v. So. Guar. Ins. Co.,* 191 F. Supp. 2d 1321, 1328 (M.D. Ala. 2002) (Thompson, J.). Consequently, it cannot be that McGaughy's motion to strike is made pursuant to Rule 12(f).

Given that the affidavit McGaughy challenges is submitted in support of a motion for summary judgment, the affidavit must comply with the requirements of Rule 56(e) of the Federal Rules of Civil Procedure. Rule 56(e) makes it plain that affidavits submitted in support of or opposition to a motion for summary judgment, such as the affidavit at issue here,

> shall be made *on personal knowledge*, shall set forth such facts as would be *admissible in evidence*, and shall *affirmatively show that the affiant is competent to testify to the matters stated therein.*

Fed. R. Civ. P. 56(e) (emphasis added). Affidavits which fail to meet the standards set forth in Rule 56(e) may be subject to a motion to strike. *See, e.g., Thomas v. Ala. Council on Human Relations, Inc.*, 248 F. Supp. 2d 1105, 1112 (M.D. Ala. 2003) (Fuller, J.); *Givhan v. Electronic Eng'rs, Inc.,* 4 F. Supp. 2d 1331, 1334 (M.D. Ala. 1998) (DeMent, J.). However, if an affidavit contains some improper material, the court need not strike the entire affidavit, rather it may strike *or disregard* the improper portions and consider the remainder of the affidavit. *Id.* at 1334 n.2 (citing *Lee v. Nat'l Life Assurance Co.*, 632 F.2d 524, 529 (5th Cir. 1980).

The challenged affidavit appears to be based on personal knowledge and show that the affiant is competent to testify to the matters included in the affidavit. McGaughy,

however, challenges the affidavit on relevancy grounds. Ozark counters that evidence surrounding McGaughy's termination from Ozark – a termination that occurred over a year and a half after Ozark initial failed to hire McGaughy – "confirms Ozark's [initial] decision not to hire McGaughy .... [and is thus] highly relevant to the issues at hand and probative of McGaughy's reputation as a bad employee." Doc. # 57 at 1.

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" and Federal Rule of Evidence 402 declares "evidence which is not relevant is not admissible." The Court agrees with McGaughy as there is no possible way that McGaughy's termination in February 2007 could be in any way relevant to the initial decision not to hire him in July 2005. Consequently, McGaughy's Motion to Strike (Doc. # 52) is due to be GRANTED with respects to Calvert's supplemental affidavit and the portions of the brief in support of the motion for summary judgment that discuss the February 2007 termination.

**B.    *Motion for Summary Judgment***

*1.    Race Discrimination claims*

McGaughy brings claims of race discrimination under both Title VII[6] and 42 U.S.C.

---

[6]    Title VII makes it unlawful for an employer "to fail or refuse to hire ... any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

§ 1981.[7] The claims brought under these two statutes have the same requirements of proof

and use the same analytical framework. *Keith v. MGA, Inc.*, 2006 WL 3228073 at *2 (11th

Cir. 2006). Therefore, from this point forward, the Court "will explicitly address the Title

VII claim with the understanding that the analysis applies to the 1981 claim as well." *Id.*

(quoting *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)).

As McGaughy provides only circumstantial evidence of race, the analysis proceeds

under the burden-shifting analysis articulated by the United States Supreme Court in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[8] First, McGaughy must establish

a *prima facie* case of racial discrimination. This is done by showing (1) that he is a member

of a protected class; (2) that he was qualified for the position; (3) that he suffered an adverse

---

[7] Section 1981 "prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." *Ferrill v. Parker Group*, 168 F.3d 468, 472 (11th Cir. 1999). Specifically, Section 1981 provides, in relevant part, that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . . as is enjoyed by white citizens. . . .
> . . . .
> For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

[8] McGaughy is not necessarily at a disadvantage if armed only with circumstantial evidence of discrimination as the burden-shifting analysis was implemented by the United States Supreme Court for precisely such a situation. *See, e.g., St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 526 (1993) ("Because Title VII tolerates no racial discrimination, subtle or otherwise, we devised a framework that would allow both plaintiffs and the courts to deal effectively with employment discrimination revealed only through circumstantial evidence.").

employment action; and (4) people outside his classification were treated more favorably.
*Maynard*, 342 F.3d at 1289 (citing *McDonnell Douglas*, 411 U.S. at 802).

Ozark questions whether McGaughy made a *prima facie* case on the grounds that
McGaughy was unqualified due to "his poor work history with Fast Air of Dixie." Doc. 46
at 7. While this may provide a legitimate and non-discriminatory reason for the non-hiring,
it does not necessarily render McGaughy unqualified for the position as the threshold for
establishing a prima facie case is relatively low. *See, e.g., Holifield v. Reno*, 115 F.3d 1555,
1562 (11th Cir. 1997) ("Demonstrating a prima facie case is not onerous; it requires only that
the plaintiff establish facts adequate to permit an inference of discrimination."). McGaughy
has established that he had experience as a route driver, and was employed in that position
when Fast Air went out of business on July 1, 2005. Therefore, for purposes of establishing
a *prima facie* case, McGaughy was qualified for the position.

The burden shifts now to Ozark to rebut the inference of race and age discrimination
by presenting legitimate, non-discriminatory reasons for not hiring McGaughy. *Holifield*,
115 F.3d at 1564. This burden is "exceedingly light." *Id.* The burden is one of production,
not persuasion, and consequently, the employer need only produce evidence that could allow
a rational fact-finder to conclude that the challenged employment action was not made for
a discriminatory or retaliatory reason. *See, e.g., Davis v. Qualico Miscellaneous, Inc.*, 161
F. Supp. 2d, 1314, 1321 (M.D. Ala. 2001) (Thompson, J.). Ozark has met this burden of
production with evidence by way of the Calvert and Scott affidavits that McGaughy

performed poorly at his job with Fast Air and that this information was known to Ozark at the time McGaughy applied on July 15, 2005.

Once the employer offers a legitimate, non-discriminatory reason, the burden returns to the employee to supply "evidence . . . sufficient to permit a reasonable fact-finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Davis,* 161 F. Supp. 2d at 1322 (*citing Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*)).  "The district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find [all of those reasons] unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997) (quotations and citations omitted).

This burden of proof for establishing pretext may be met by either of two methods. McGaughy "could adduce evidence that might directly establish discrimination" or, alternatively, he could point to enough evidence to permit the jury to reasonably disbelieve Ozark's proffered reason for terminating him.  *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1290 (11th Cir. 1998).  McGaughy has chosen the latter method.  Specifically, McGaughy argues that the fact that Ozark did not inform the EEOC investigator that McGaughy's job performance at Fast Air was a reason for his non-hiring is evidence of pretext.  McGaughy argues, "That shift alone is sufficient to show pretext."  Doc. 51-1 at 9.

McGaughy cites *Mock v. Bell Helicopter Textron, Inc.*, 2006 WL 2422835 (11th Cir.

2006) for the proposition which demonstrates that an employer who changes its position, or modifies it, creates a genuine issue of material fact whether there was a pretext for discrimination. In *Mock*, the employee insisted the employer give a reason for its decision to terminate him but the employer refused. Only at a later point did the employer give a reason in the form of a letter. The Eleventh Circuit found that summary judgment was inappropriate in that context because the employee created a genuine issue of material fact and that a trier of fact could reasonably find that the letter constituted a pretext for discrimination.[9]

Similarly, however, the circumstances are such that a reasonable trier of fact could find that Ozark's stated reason for not hiring McGaughy was a pretext for discrimination. While Ozark demonstrated through the Scott and Calvert affidavits that Ozark was aware

---

[9] Indeed, the Eleventh Circuit has made clear that where there are inconsistencies in an employer's testimony about the reason for the adverse employment action, this may serve as evidence of pretext. *See, e.g., Hurlbert v. St. Mary's Health Care Sys., Inc.,* 439 F.3d 1286, 1298-99 (11th Cir. 2006) ("We have recognized that an employer's failure to articulate clearly and consistently the reason for an employee's discharge may serve as evidence of pretext."); *Damon v. Fleming Supermarkets of Fla.,* 196 F.3d 1354, 1366 & n.6 (11th Cir. 1999) (where in context of summary judgment submissions employer cites additional and previously unmentioned grounds for termination decision, employee may have sufficient evidence of pretext to require denial of summary judgment); *Bechtel Constr. Co. v. Sec'y of Labor,* 50 F.3d 926, 935 (11th Cir.1995) (in proceeding before ALJ, employer gave plaintiff's attitude as reason for termination, but on appeal employer claimed reasons were plaintiff's job performance and medical condition); *Corbin v. Southland Int'l Trucks,* 25 F.3d 1545, 1550 (11th Cir. 1994) (fact that employer's documentation from the time of the challenged adverse employment action was not consistent with the employer's later explanation of the reason for the employment action constituted some evidence of pretext on which plaintiff could rely).

of McGaughy's substandard work history with Fast Air when it made the hiring decisions, Ozark did not give the EEOC that story. Instead, Ozark told the EEOC, in a letter from Calvert himself, that "[w]e had all our routes filled and all necessary employees hired at the time Mr. McGaughy applied." Given the peculiar relationship between Ozark and McGaughy[10] it is understandable that Ozark would be hesitant to "stir up acrimony" by supplementing its response to the EEOC with information about McGaughy's work history, but, in any event, failing to do so creates a genuine issue of material fact and a situation where a reasonable trier of fact could find that Ozark's stated reason for not hiring McGaughy was pretext for racial discrimination. Therefore, the Motion for Summary Judgment is due to be DENIED on the Title VII and 42 U.S.C. § 1981 claims.

### 2.    *Age Discrimination claims*

McGaughy also brings a claim of age discrimination under the ADEA. The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

> When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision. That is, the plaintiff's age must have 'actually played a role in [the employer's

---

[10] The intricacies are recounted in the Court's Amended Memorandum Opinion and Order (Doc. # 36) entered on December 21, 2006.

decisionmaking] process and had a determinative influence on
the outcome.'

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141 (2000) (internal citation

omitted) (quoting *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993)).  Courts have

often recognized that the inquiry under the ADEA implicate analyses of the mental processes

of employers for which there is seldom eye-witness testimony.  *See id.*  Consequently, they

have applied some variation on the framework articulated in *McDonnell Douglas* and its

progeny to analyze ADEA cases brought primarily on circumstantial evidence.  *Id.* at 141

(collecting cases); *Turlington v. Atlanta Gas Light Co.,* 135 F.3d 1428, 1432 (11th Cir.

1998).

Thus, an employee bringing a claim under the ADEA must initially establish a *prima

facie* case of discrimination through one of three methods: presenting direct evidence of

discriminatory intent, presenting circumstantial evidence of discrimination or introducing

statistical evidence of discrimination.  *See, e.g., Walker v. NationsBank of Fla.,* 53 F.3d 1548,

1555-56 (11th Cir. 1995).  Because McGaughy provides only circumstantial evidence, the

analysis is governed, as it did for the race discrimination claims, by the *McDonnell-Douglas*

burden-shifting analysis.  The result of this analysis is no different with respect to the ADEA

claim.  A genuine issue of material fact exists with respect to whether the legitimate non-

discriminatory reason proffered is pretextual.  Therefore, the Motion for Summary Judgment

is due to be DENIED with respect to this claim.

## VI. CONCLUSION

14

For the foregoing reasons, it is hereby ORDERED as follows:

(1) The Motion to Strike (Doc. # 52) is GRANTED.

(2) The Motion for Summary Judgment (Doc. # 47) is DENIED

(3) The Motion for Leave to File Supplement Response to Motion for Summary

Judgment (Doc. # 65) is DENIED AS MOOT.

DONE this the 1st day of May, 2007.


_____
          /s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE